```
                    UNITED STATES DISTRICT COURT
                 DISTRICT OF DELAWARE (WILMINGTON)

CLIFFS NATURAL RESOURCES .    Case No. 1:17-cv-00567-GAM
INC., et al.            .
                        .
        Plaintiffs,     .
                        .    J. Caleb Foggs Federal Building,
    v.                  .    844 North King Street, 4th Floor
                        .    Wilmington, DE 19801
SENECA COAL RESOURCES,  .
LLC, et al.             .
                        .
        Defendants.     .
                        .    October 13, 2017
. . . . . . . . . . . . ..    11:46 a.m.

              TRANSCRIPT OF TELEPHONE CONFERENCE
            BEFORE HONORABLE GERALD A. McHUGH
               UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiff            ROBERT J. FOGARTY, ESQ.
Cliffs Natural           E. SEAN MEDINA, ESQ.
Resources Inc.:          HAHN LOESER & PARKS LLP
                         200 Public Square, Suite 2800
                         Cleveland, OH 44114

                         PILAR GABRIELLE KRAMAN, ESQ.
                         YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
                         Rodney Square
                         1000 North King Street
                         Wilmington, DE 19801

For Defendant            CHRISTOPHER VICECONTE, ESQ.
Seneca Coal Resources,   GIBBONS P.C.
LLC, et al.:             300 Delaware Avenue, Suite 1015
                         Wilmington, DE 19801

                         CAMILLE V. OTERO, ESQ.
                         KEVIN W. WEBER, ESQ.
                         GIBBONS P.C.
                         One Gateway Center
                         Newark, NJ 07102
```

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

```
                          DONNA LYNN CULVER, ESQ.
                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                          1201 North Market Street
                          P.O. Box 1347
                          Wilmington, DE 19899

                          SAMUEL TAYLOR HIRZEL, II, ESQ.
                          HEYMAN ENERIO GATTUSO & HIRZEL LLP
                          300 Delaware Avenue, Suite 200
                          Wilmington, DE 19801


Audio Operator:           Christian Henry, ESR

TRANSCRIBED BY:           Eileen Dhondt, CET-807
                          Aequm Legal Transcription Services
                          6934 East Almeria Road
                          Scottsdale, AZ 85257
```

Proceedings recorded by electronic sound
recording, transcript produced by transcription service.

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

INDEX

                                                  PAGE:

Matters Before the Court                           4

<pre>
 1                           PROCEEDINGS

 2          (Call to the Order of the Court)

 3          (Proceedings commence at 11:45 a.m.)

 4              THE COURT:  Good morning, counsel.  Is everyone on the

 5  line?

 6              UNIDENTIFIED SPEAKER:  Yes.  Good morning, Your Honor.

 7              THE COURT:  All right.  I thought I would go ahead and

 8  conduct this conference on the record, so we've got a recording

 9  device here.

10              This is District of Delaware Civil Action 17-567.

11              And could counsel please identify themselves for the

12  record?

13              MR. FOGARTY:  Yes.  Good morning, Judge.  Bob Fogarty

14  for Cliffs, Cleveland-Cliffs.

15              MS. KRAMAN:  Your Honor, this is Pilar Kraman at Young

16  Conaway, Delaware counsel for the plaintiffs, and I believe Sean

17  Medina is also on from Hahn Loeser.

18              MR. MEDINA:  That is correct.  Good morning, Your

19  Honor.

20              MR. VICECONTE:  Good morning, Your Honor.  This is

21  Chris Viceconte, the Gibbons firm, for Seneca Coal Resources,

22  and with me is Camille Otero and Kevin Weber.

23              MS. OTERO:  Good morning, Your Honor.

24              THE COURT:  Good morning.

25              MS. CULVER:  Good morning, Your Honor.  This is Donna
</pre>

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

1  Culver of Morris, Nichols, Arsht & Tunnell on behalf of Kenneth

2  McCoy, Jason McCoy, and Iron Management II, LLC.

3          THE COURT:  All right.

4          MR. HIRZEL:  And good morning, Your Honor.  This is

5  Sam Hirzel and Jamie Brown at Heyman Enerio Gattuso & Hirzel on

6  behalf of Tom Clarke, Ana Clarke, and Lara Natural Resources,

7  often referred to as the Clarke defendants.

8          THE COURT:  All right.  This matter is scheduled for a

9  bench trial on July 25, 2018.  I'm prepared to keep that trial

10  date, all right?  So all counsel can be guided accordingly.

11          I have reviewed the various proceedings in front of

12  Judge Fallon.  I had asked her to conduct the August 17th

13  hearing.  My takeaway from reviewing the transcript is she was

14  concerned by the boilerplate objections of the defense and also

15  concerned at the slow rate of progress in making discovery.  So

16  hold that thought for the moment.  Let me turn back to Cliffs.

17          You had indicated that you thought your document

18  production would be completed by September 15th.  Have you, in

19  fact, completed it?

20          MR. FOGARTY:  Yes, Your Honor.

21          THE COURT:  All right.

22          MR. FOGARTY:  Right, Sean?

23          MR. MEDINA:  That is correct.  We just made a

24  supplemental production the other day with very few documents.

25  Some of the documents that Seneca requested in this letter we

1  produced the other day, but we are completed with our

2  production.

3          THE COURT:  All right.  And I realize this is a moving

4  target because after the one letter is filed, the evidence

5  letter filed, and people were continuing to produce documents in

6  the interim.

7          So, Cliffs, you now say we've produced everything that

8  is responsive.

9          Seneca and other defendants, let me hear from you on

10  that score.

11          MR. WEBER:  Yes, Your Honor.  This is Kevin Weber from

12  the Gibbons law firm.  So you're correct.  After we filed our

13  letter on October 6th, Seneca -- Cliffs did make a supplemental

14  production, producing documents that we have not yet reviewed

15  but purport to be responsive to some of the categories in our

16  letter of October 6th, and we would be prepared to withdraw our

17  motion as to several of the requests.

18          However, there are other requests where Cliffs has

19  outright refused to produce any documents and are standing by

20  their objections, and we would request a ruling on those.

21          THE COURT:  We're going to work through the letters in

22  a moment, Counsel, but one of the things that I understand him

23  to be saying is we don't have the documents.  And it strikes me

24  that that's, unlike many discovery disputes, an actual physical

25  fact.  People either have the documents or they don't.  So we'll

7

1    work through that when the time comes.

2            But, globally, is there any other issue with respect

3    to Cliffs saying we have met our obligation to produce?

4    Reserving those individual items we'll get to, any overarching

5    concern?

6            MR. WEBER:  No.  Other than what is set forth in this

7    letter, and we're, frankly, not done reviewing what Cliffs has

8    produced thus far.  So, you know, subject to that caveat, we are

9    just looking for a resolution on this dispute.

10           THE COURT:  All right.  And, Cliffs, you say that you

11   noticed eight depositions back in March of 2017.  Do I

12   understand that correctly?

13           MR. FOGARTY:  That's absolutely right, Your Honor,

14   including the 30(b)(6) of Seneca.

15           THE COURT:  And I understand --

16           MR. FOGARTY:  Which I have been asking for --

17           THE COURT:  Right.

18           MR. FOGARTY:  -- since that --

19           THE COURT:  I understand your position is that even

20   though you may not have all of the documents that Seneca

21   ultimately intends to produce, you still want to go ahead and

22   get moving on those depositions, which, according to Judge

23   Fallon, should all be done by mid-November, correct?

24           MR. FOGARTY:  Absolutely right, Your Honor.

25           THE COURT:  All right.  So let's now flip back over to

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

1   the letters that we have.  The motivating force for this

2   conference was a letter from the defense of October 6th, and so

3   I'm happy to take this, counsel, just one by one by one.  As we

4   look at the first page of the letter, the requests 22, 23, and

5   30, my understanding is that plaintiff says, "We don't have

6   those documents.  You have physical possession of them."  Is

7   that your position, plaintiff?

8              MR. FOGARTY:  Yes, Your Honor.

9              THE COURT:  All right.  So, again, defense, what is it

10  that leads you to say that Cliffs has documents that they are

11  refusing to produce or review?  I mean, it just -- again, it

12  seems to me that this is one of those ascertainable facts.  They

13  either turned over the records as part of this transaction or

14  they didn't.  What's your position?

15             MR. WEBER:  Yes.  So 22, 23, and 30, Your Honor, are

16  the ones that they say they don't have them, but then they say,

17  "We made a production this week of 1,200 pages of documents, and

18  that is responsive to your request."  So it seems a little bit

19  speaking out of both sides of their mouths on that one.  But,

20  again, this is the one -- 22, 23, and 30, these are the ones I'm

21  willing to withdraw based on their representation that they did

22  produce documents this week that are responsive to 22, 23, and

23  30.  I think I'm obligated to take a look at those before I

24  maintain this motion on those ones.

25             THE COURT:  All right.  But, again, it seems to me

1  that unlike a lot of discovery disputes there may actually be a

2  reality that can assert itself.  And, you know, I'm assuming,

3  counsel, that if people were saying these are all the documents,

4  somebody is prepared to swear to that.  Or if somebody says we

5  turned over all the documents somebody is prepared to swear to

6  that, and then answer accordingly to the Court should that not

7  be true.  Everybody understand?

8           MR. WEBER:  Yes, Your Honor.

9           THE COURT:  All right.  So let's take it to 27.  Now

10 I'm going to page 2 of the letter, request numbers 27 and 29.

11          MR. WEBER:  Yes.

12          THE COURT:  As to 27, the financial statements,

13 putting to one side the relevance issue, again, we have a

14 representation by Cliffs that they were turned over.  Or is that

15 -- or, no, is that -- the representation here is that ee

16 produced our annual reports and that contains the financial

17 statements.

18          So let me look to Seneca.  What is it beyond what

19 would be in the annual reports that you think is out there and

20 you're entitled to?

21          MR. WEBER:  Again, Your Honor, that's one that they

22 produced the annual reports.  I'm obligated to look at them.

23 However, I think the term "financial statements" is certainly

24 broader than what's in an annual report that's given to the SEC.

25 And we're looking for the financial reports and statements

10

1    related to these subsidiary companies -- Oak Grove and Pinnacle

2    -- that were in the possession of the parent company, Cliffs,

3    and I think we're entitled to see those.

4         I'm happy to look at Cliffs' annual SEC report, but we

5    certainly suspect that there would be separate financial

6    statements for the subsidiaries that would be in the parents'

7    possession.  They haven't said that they don't exist.  They're

8    just saying we're only giving you the annual report which

9    certainly makes the hair on the back of my neck stand up that

10   there are financial statements for these subsidiaries, but

11   they're not --

12        THE COURT:  I understand your position.

13        Cliffs, what is your answer?

14        MR. FOGARTY:  Your Honor, the answer is, first of all,

15   they're not relevant.  But, secondly, Cliffs does consolidated

16   financial reports.  They asked for Cliffs' financial statements,

17   not subsidiaries.

18        THE COURT:  All right.  Seneca, what do you have to

19   say to that?  He says I gave you what you asked for.

20        MR. WEBER:  Well, I don't know whether Mr. Fogarty is

21   saying that the consolidated financial statements are what is

22   being turned over, or is that something different than the

23   annual reports, because that's the first I'm hearing about this.

24        THE COURT:  All right.  Plaintiff, what is the answer

25   to that?

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

```
 1              MR. FOGARTY:  Your Honor, the answer is that Cliffs'

 2     annual reports contain consolidated financial statements.

 3              THE COURT:  And by that, do you mean that the various

 4     -- the related entities that they purport to be interested in

 5     are covered?  Is that what you're saying?

 6              MR. FOGARTY:  Yes, Your Honor.

 7              THE COURT:  All right.  And, Seneca, what do you say

 8     to that?

 9              MR. WEBER:  Well, I guess we'll have to get a

10     representation from, you know, somebody that that's all there

11     is.  I think that's what Mr. Fogarty is saying, that that's all

12     there is.  So I think we're obligated to take that

13     representation, if someone will say it under oath.

14              THE COURT:  All right.  We're making progress.  Let's

15     go to 28.  We're talking now --

16              MR. FOGARTY:  I'm not -- Your Honor, so it's not, I'm

17     not saying that that may not be -- that that's not all there

18     are.  What they asked for is Cliffs' financial statements, the

19     parent, and that's what the annual reports contained.

20              THE COURT:  All right.  But I just asked you a

21     question, counsel, where I said, "Are you saying because they're

22     consolidated that it extends to affiliates as well?"  And I

23     thought you told me yes.

24              MR. FOGARTY:  It does, Your Honor.  But they're

25     consolidated.  They're not separate.
```

1          THE COURT:  All right.  Well, Seneca, do you think

2    that that matters, that they're consolidated, not separate?

3          MR. WEBER:  That's hard for me to say at this stage,

4    Your Honor, but I think I'll take a hard look at the annual

5    reports, and I think I'll question a witness about what exists

6    and what doesn't exist and I'll remake -- and we'll remake a

7    request for additional information if needed.

8          THE COURT:  All right.  We'll assume for now that this

9    issue is resolved, subject to revisiting should it become

10   apparent that there is something relevant that is missing.

11         All right.  Request number 28, potential --

12   communications with potential purchasers.  And so there is no --

13   just to clarify, on this one it doesn't look like there is a "we

14   gave it to you."  This is more of a straight-up relevance issue,

15   right?

16         MR. FOGARTY:  Yes, Your Honor.

17         THE COURT:  All right.  Cliffs, let me -- as I

18   understand one of the allegations here, it's that not everything

19   was as it should be.  So why isn't Seneca entitled to hear as to

20   what you might have said to other people?

21         MR. FOGARTY:  Well, they -- it's just four specific

22   items, Your Honor, that they're questioning, and those all deal

23   with issues at the time of the closing.  And either -- assuming

24   they survived the motion to dismiss, those issues are specific

25   to -- between these two -- between us two parties, not someone

1   else.

2              THE COURT:  Right.  And --

3              MR. FOGARTY:  Either they were -- they are or they

4   weren't.

5              THE COURT:  Well, let me take a brief detour and talk

6   about motions to dismiss.  We're well into the analysis of that,

7   and there is only one area that I think has any legs.  We may or

8   may not -- and I doubt we'll ask for argument on it, but I think

9   by and large, as is true of most complex commercial cases, it's

10  pretty hard to make it go away at the 12(b)(6) level when you

11  have good lawyers pointing out all of the various contingencies.

12             So for purposes of this discussion, let's assume that

13  the vast majority of those motions are likely to be denied.

14  Okay?  So coming back -- so you would say because you've got

15  specific counterclaims that this does not in any way bear on

16  those counterclaims.  So, Seneca, what would you say?

17             MR. WEBER:  Yes.  So, Your Honor, as we set forth in

18  our opposition to the motion to dismiss, one of our legal

19  theories is the so-called peculiar knowledge or special facts

20  exception, which is under New York law.  And what that says is

21  if there is information that we could not have uncovered in due

22  diligence that was known specifically to the seller, you know,

23  they may have had a duty to disclose that.

24             And I think you can sort of deal with number 28 and

25  number 29 together on this, Your Honor.  Twenty-eight is about

1   communications to other purchasers.  We want to see the

2   information you gave other purchasers to see if it was the same

3   as what you showed us.

4         And number 29, we want to see any internal studies and

5   reports about the Oak Grove and Pinnacle mines to see how Cliffs

6   viewed the assets and liabilities of those entities.  And the

7   purpose, obviously, is to compare that to what was given to us

8   in due diligence to see if there was any financial information

9   that was specifically and peculiarly in the knowledge of Cliffs

10  that was not turned over to us during the due diligence phase.

11        THE COURT:  Which one of your four counterclaims

12  encompasses that?

13        MR. WEBER:  So I think it would be relevant to the

14  accounts payable, the first, the second, and the fourth.  So

15  it's about the representations that were made to us, and they

16  gave us information and due diligence, and it had to be to our

17  reasonable satisfaction.  So they showed us information about

18  the accounts payable and accounts receivable.  They showed us

19  information about the equipment.  They showed us information

20  about --

21        THE COURT:  All right.  I'm prepared to rule on that.

22  Cliffs, your objection is going to be overruled, and any

23  communications to potential purchasers you should produce to

24  Seneca.

25        All right.  Twenty-nine, financial condition and

```
 1   status of the mines from 2010 to 2015.  Again, we get back to
 2   baseline reality.  Seneca says we do not physically have these
 3   documents.  So, Cliffs, what would you say?
 4          MR. WEBER:  I think that you maybe did that backwards,
 5   Your Honor.
 6          THE COURT:  I did do it backwards.  You're right.
 7   Sorry.  My apologies.
 8          MR. WEBER:  Yes.  So, again, this is a new
 9   supplemental response that we just received this week, and it is
10   true that we -- when they turned over the company to us, they
11   turned over the books and records of Oak Grove and Pinnacle.
12   Again, what we were seeking is if the parent company had
13   something different, we'd want to see how the parent company had
14   financial statements, balance sheets, et cetera, for these
15   subsidiaries that was different than what the subsidiaries had.
16          What I'm hearing from Mr. Fogarty today, which is for
17   the first time, that it's a consolidated financial statement for
18   the entire company, including the subsidiaries, and that's
19   rolled up into the annual report.  In other words, what I'm
20   hearing is what I'm asking for doesn't exist.  I have to take
21   that representation, Your Honor.  There is nothing else I can do
22   with that.
23          THE COURT:  Well, let's just clarify.  Is that the
24   representation, plaintiff?
25          MR. FOGARTY:  I'm not -- Your Honor, I'm not quite
```

166

1    sure what he's saying there.  What he asked for was the

2    financial statements of the parent, and those are consolidated

3    financial statements.

4           MR. WEBER:  No.  The request that --

5           MR. FOGARTY:  How the financial condition of the mines

6    prior to closing has any relevance to any of these claims, you

7    know, that we certainly -- we certainly object to.  There's no

8    relevancy.  And all of the financial records of the entities

9    that were purchased were put in a data room and turned over

10   lock, stock, and barrel to Seneca.

11          MR. WEBER:  Your Honor, I'm hearing two different

12   things there.  I hear that the books and records of the

13   companies was turned over to Seneca, and that is true.  Then

14   what I'm hearing is, well, the financial condition is not

15   relevant.  So, obviously, the financial condition is relevant to

16   us.  That's part of our theory of the case.

17          But what I'm not hearing is whether all documents that

18   talk about the financial condition were turned over.  That could

19   be something other than the books and records that were given to

20   us.  If the parent company has books and records that talked

21   about the financial condition of these mines, we want them, and

22   we think they're relevant, and we think they support our theory

23   of the case.

24          THE COURT:  All right.  So --

25          MR. WEBER:  That would be something other than what

```
 1    was given to us in the data room.  That's the whole point.

 2              THE COURT:  And so, plaintiff, are there records that

 3    would be in your possession that would be relevant to the

 4    condition of the subsidiaries that remain in your possession and

 5    have not been turned over?

 6              MR. FOGARTY:  That would not be duplicative, Your

 7    Honor?

 8              THE COURT:  Yes.

 9              MR. FOGARTY:  I don't know the answer to that; do you,

10    Sean?

11              MR. MEDINA:  I don't.  I will make a caveat that what

12    Seneca is seeking is not the financial condition of the mines in

13    2015, which we have already produced.  They are seeking the

14    financial condition of the mines from 2010.  Later on, they

15    tried to change it to 2012, but what the financial conditions of

16    the mines from 2012 are for mines that were purchased in 2015 is

17    not relevant here.

18              MR. WEBER:  So let's clarify that.  So the original

19    request was 2010 to 2015.  During the meet-and-confer process,

20    we agreed to dial that back a little bit in the interest of

21    being reasonable attorneys.  So I'm willing to take it for a

22    couple of years before the closing.  But, yes, I don't want just

23    the financial information from at the closing.  I want to see

24    what the parent had regarding the financial condition of these

25    mines in a couple of years leading up to the closing.
```

 1          THE COURT:  And from the standpoint --

 2          MR. MEDINA:  And I think Cliffs is objecting that

 3 their financial -- what Cliffs' view of the financial conditions

 4 of the mines in 2012 has nothing to do with what Cliffs

 5 disclosed in 2015 as of that date.

 6          THE COURT:  All right.  And --

 7          MR. MEDINA:  In the contract, we're looking at very

 8 specific disclosures required, and none of those say what was

 9 Cliffs' parent company view of the mines three years ago.

10          MR. WEBER:  So we disagree with them on relevance,

11 Judge.  It's a relevancy objection that they are making.  This

12 is discovery.  Whether it's admissible, ultimately, at a trial

13 is a different story, but we certainly think it's something we

14 should be able to probe in discovery.

15          THE COURT:  I have no problem, plaintiff, with the

16 idea that the condition from at least 2013 on would be relevant,

17 and so my ruling would be that if there is an objection as to

18 relevancy, I will narrow the timeframe to 2013 to 2015, but then

19 impose the burden on you to represent whether, in fact, there

20 would have been documents pertinent to the health of the

21 subsidiaries that are in your possession that have not yet been

22 turned over.  Okay?  Does that give enough clarity?

23          MR. WEBER:  It does for Seneca, Your Honor.

24          MR. FOGARTY:  Yes, Your Honor.

25          THE COURT:  All right.  Now we're up to number 30,

| | |
|---|---|
| 1 | customer contracts for 2010 to 2015. |
| 2 |       MR. WEBER:  That was one of the withdrawn ones, Your |
| 3 | Honor; 22, 23, and 30 I'm withdrawing. |
| 4 |       THE COURT:  Thank you.  31? |
| 5 |       MR. WEBER:  31, Your Honor, I think we -- we -- I |
| 6 | think it dovetails into the one you just ruled on and the one |
| 7 | about the financial statements.  So, again, analyses, reports, |
| 8 | you know, if these guys had McKinsey & Company come in in 2013 |
| 9 | and tell them things about the mine, I want to see that |
| 10 | analysis.  I want to see that report. |
| 11 |       So we would accept the same limitation that Your Honor |
| 12 | just imposed about the health of the mines.  I think this goes |
| 13 | along with that one.  We'd be willing to, you know, live with |
| 14 | that same restriction. |
| 15 |       THE COURT:  Cliffs, do you want to try and talk me out |
| 16 | of making the same ruling? |
| 17 |       MR. FOGARTY:  Yes.  Yes, I do, Your Honor.  This was |
| 18 | an assumption of liability sale.  There was no -- there was no |
| 19 | payment made to Cliffs.  And what the parties -- in their due |
| 20 | diligence, we turned over all of the records with -- what the |
| 21 | parties agreed to do to make the deal based on the due |
| 22 | diligence, you know, whether Seneca made a good deal or whether |
| 23 | Cliffs ended up making a good deal, you know, their internal |
| 24 | evaluations of the risks and benefits of this deal had nothing |
| 25 | to do with the lawsuit or any of the claims in it. |

1          MR. WEBER:  We disagree, Your Honor.  It goes to the

2    validity of the representations that were made in the UPA and

3    the information that was turned over in due diligence or perhaps

4    purposely withheld in due diligence.  So we think it's squarely

5    relevant.

6          THE COURT:  You know, whenever we talk about due

7    diligence, at the end of the day you get down to a certain

8    degree how much disclosure was, because the due diligence -- the

9    quality of it is a product of what the -- was analyzed.  And so

10   to the extent Cliffs is objecting, I'm going to overrule the

11   objection, but I'm going to narrow the scope to 2013 to 2015.

12         Cliffs may be right that that doesn't change the

13   analysis of the liabilities here, but it's at least I think

14   discoverable as to whether or not there was material information

15   that might not have been available.  And then Cliffs can argue

16   later that if internally they did their own analysis and said,

17   "Hey, this is a good deal for us," that may not be relevant to

18   any of the claims in the case.

19         But if it were, say, for example, McKinsey or somebody

20   that was giving information and it wasn't turned over then that

21   could indeed shed light on it.  So we'll sort out the meaning of

22   any such information downstream.  But because we're now talking

23   discovery and not merits, my ruling will be that for that

24   timeframe such material should be turned over.

25         MR. WEBER:  Thank you, Your Honor.  So I think that

1    brings us to the end of our motions to compel, Your Honor, and I

2    think that would just leave us with the discovery schedule.  And

3    we appreciate Your Honor's ruling that the trial date should not

4    be moved, but the more pressing deadline on Seneca right now is

5    the deadline for all fact discovery.  And as we put in our

6    letter to Your Honor, we're about two-thirds done with our

7    document production.

8         We do take a little bit of exception to Cliffs'

9    statement that we're doing a document dump in order to stretch

10   out this case somehow.  Discovery has really only been underway

11   since the case was transferred to Delaware in May, so it has

12   only been a few months.  And Cliffs did serve 72 separate

13   document requests on Seneca, including for information after the

14   closing, despite what they say in their letter.

15        So we have been working very diligently.  I have a

16   team of associates reviewing documents every day, and the

17   reality is we need a couple more weeks to finish the document

18   production.  And I think that the normal order of operations

19   would be that we then pick up depositions after there, so we

20   don't have to bring people back twice and do it piecemeal.

21        So our request is that we extend the fact discovery

22   deadline until after the first of the year, and I think we would

23   be willing to try to shorten up some of the other expert

24   deadlines, so we could meet that trial date, if necessary.

25        THE COURT:  I thought Cliff filed 62 document

1   requests, but then 80 to the Clarkes.  Well, be that as it

2   may --

3            MR. WEBER:  72 to Seneca, Your Honor.  I don't know

4   how many to the other parties.  All defendants together, I think

5   that was that number.  But be that as it may --

6            MR. FOGARTY:  Your Honor, from Cliffs' perspective, we

7   have been ready to do depositions since March, just so the Court

8   knows.  Under the UPA, they would assume all liabilities and

9   costs that were incurred by Cliffs.  Since that time, we have

10  sent them I think 20 monthly invoices of what those costs have

11  been totaling some -- over $6 million, none of which they have

12  objected to.  And that's why we're prepared to move forward with

13  our 30(b)(6) and the depositions of Tom Clarke and the others,

14  as we have been asking them to give us dates now for many

15  months.

16           THE COURT:  Yeah.  I am concerned, Seneca, that -- I

17  mean, it strikes me that on one level the plaintiff having the

18  burden of proof says hey, even without all your documents we're

19  willing to go ahead and take depositions.  To a certain degree,

20  they incur the risk of doing that, because I assume that then

21  downstream you would say no, we're not going to bring this

22  person back.

23           And as I understand it, everybody has agreed to a cap

24  on deposition hours of 64 hours; is that right?

25           MR. FOGARTY:  Yes, Your Honor.

1          MR. WEBER:  I believe that's correct, Your Honor, if

2     that's the number.  I don't have that in front of me.

3          THE COURT:  Right.  Okay.  So if plaintiff says we

4     want eight, that's 56 hours there, and then defendants can go

5     back the other way.  I really think we ought to get moving on

6     this, and I'm very hesitant to undercut Judge Fallon who spent a

7     lot of time trying to marshal the case.

8          So I think what I'm going to do is what I hate judges

9     doing when I was a lawyer, and I'll split the difference, and

10    I'll move the fact discovery deadline into December sometime.

11         But, Seneca, I think it's time for you to start

12    presenting witnesses.  All right?

13         MR. WEBER:  Okay.  Bob, are you intending to reissue

14    notices?  Do you want me to work off those old notices from

15    months and months ago?

16         MR. FOGARTY:  We'll reissue a 30(b)(6) notice, but the

17    order -- I'd like to go with the 30(b)(6) first, then Tom

18    Clarke, and move on with the McCoys.

19         MR. WEBER:  Well, I would hope that we could all get

20    reasonable about the scheduling of these executives'

21    depositions, but we're happy to work through that without Your

22    Honor on the line.

23         THE COURT:  Yeah.  I mean, I rely on counsel to act

24    professionally.  And to the extent that you have high-powered

25    business people that are making your life difficult, you just

```
 1    say that you have a completely unreasonable judge to whom you

 2    must answer; and, therefore, they should behave.

 3              MR. WEBER:  I would never say that, Your Honor.

 4              MR. FOGARTY:  But, Your Honor, I would like to get

 5    that 30(b)(6) done in October.

 6              THE COURT:  And what do you say, Seneca?

 7              MR. WEBER:  I have not even -- I don't even know who

 8    my 30(b)(6) witness will be for the various topics, but he

 9    hasn't issued me a new notice yet.  But as soon as he issues me

10    a new notice, I will designate my witnesses, and we will do our

11    level best to get a witness to him as soon as we can.

12              THE COURT:  It would be the aspirational goal of the

13    Court that it have a Happy Halloween.

14              MR. WEBER:  I take that under advisement, Your Honor.

15              THE COURT:  All right.  I have a little difficulty

16    understanding the operative order because it seems to be a

17    combination of an -- on the ECF entry by Judge Fallon and the

18    proposed order.  And so --

19              MR. WEBER:  As do we, Your Honor.  It was so ordered

20    referencing the prior number, but it wasn't clear to us whether

21    all of the items in the proposed scheduling order were being so

22    ordered.  That included some other items, including a direction

23    that we advise the Court on the status of mediation, which we

24    have not yet done.

25              THE COURT:  All right.  Well, then, why don't we say
```

 1  this.  You should assume that trial date is going to be honored.

 2  You should assume that, like Judge Fallon, it will be a

 3  time-budgeted trial.  You should assume that I've given you

 4  guidance on the basic fact discovery, and that an order is going

 5  to say something about mid-December, and then we will layer on

 6  the expert deadlines on top of that.  All right?

 7           MR. WEBER:  Thank you, Your Honor.

 8           MR. FOGARTY:  Yes.  Thank you, Judge.  Thank you,

 9  Judge.

10           THE COURT:  With respect to mediation, this is not a

11  case -- I mean, look, Delaware is swamped.  I'm not using my

12  magistrate here.  Ironically, after I told Brooke Smith I would

13  do this, we've had two judges retire and one die.  So we're a

14  little busy here ourselves now because we are up to four

15  vacancies.  So I'm not going to use an Eastern District

16  magistrate.

17           That's all by way of saying, if you want to mediate,

18  you should use an outside mediator.  And I'm willing to make a

19  recommendation in that regard, somebody that has done

20  extraordinarily good work in other very complex commercial

21  cases, and that's Dennis Suplee at the Schnader firm.

22           MR. WEBER:  What's the last name again, Your Honor?

23           THE COURT:  Suplee, S-u-p-l-e-e.  An extraordinarily

24  experienced commercial litigator, past president in the

25  International Academy of Trial Lawyers, regent of the American

1    College of Trial Lawyers, the Best Lawyers in America, bet the

2    company Lawyer of the Year.  Suffice it to say, Dennis knows

3    what he's doing.

4         MR. WEBER:  We'll be happy to review his credentials

5    and see if he is available to meet with us, Your Honor.  Seneca

6    has reached out to Cliffs on multiple occasions trying to -- as

7    the scheduling order said we were supposed to report to the

8    Court on mediation, we have inquired with them but have not

9    gotten a positive response.  So we are --

10        THE COURT:  Well, maybe you'll do a 30(b)(6) and come

11   back to me and ask for a hiatus to mediate, so -- all right.  Is

12   there anything else that can efficiently or profitably be done

13   today?

14        MR. WEBER:  Not on behalf of Seneca, Your Honor.

15   Thank you for your time.

16        MR. FOGARTY:  Not from the plaintiff, Your Honor.

17        THE COURT:  All right.  Then we'll fiddle around with

18   trying to get some clarity on the remainder of the deadlines.

19   Thanks, counsel.

20        MR. WEBER:  Thank you.

21        THE COURT:  We're adjourned.

22        MS. KRAMAN:  Thank you, Your Honor.

23        MR. FOGARTY:  Thanks, Judge.

24      (Proceedings adjourned at 12:15 p.m.)

25

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

## CERTIFICATION

I, EILEEN DHONDT, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


EILEEN DHONDT, CET 807
Aequum Legal Transcription

Dated:  October 23, 2017

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480·241·2841**