IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CLIFFS NATURAL RESOURCES INC.; | : | |
| CLF PINNOAK LLC, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 17-567 |
| v. | : | |
| | : | |
| SENECA COAL RESOURCES, LLC.; | : | |
| THOMAS M. CLARKE; | : | |
| ANA M. CLARKE; | : | |
| KENNETH R. MCCOY; | : | |
| JASON R. MCCOY; | : | |
| LARA NATURAL RESOURCES, LLC; | : | |
| IRON MANAGEMENT II, LLC, | : | |
| Defendants. | : | |

McHUGH, J.                                                                                                          OCTOBER 31, 2017

## MEMORANDUM

This case arises from a commercial transaction in which Defendant Seneca Coal Resources, LLC acquired mining assets belonging to Plaintiff Cliffs Natural Resources Inc. On December 22, 2015, Plaintiff and Seneca Coal entered a Unit Purchase Agreement ("UPA") through which Plaintiff sold outstanding equity interests of its subsidiary, Cliffs North American Coal LLC, to Seneca. The parties also executed an Override Agreement that required Seneca to make ongoing payments to Plaintiff for coal sales exceeding a designated threshold. Plaintiff alleges that after executing the agreements, Seneca breached its contractual obligations under both the UPA and the Override Agreement. Plaintiff also alleges in Count III that Seneca fraudulently conveyed assets to Defendants Lara Natural Resources, LLC and Iron Management II, LLC, and in Count IV that the individual owners of Seneca, Lara Natural Resources, and Iron

1

Management engaged in a civil conspiracy to execute the conveyances. Defendant Seneca Coal has filed counterclaims alleging that Plaintiff also breached the UPA.

Defendants Lara Natural Resources, LLC, Thomas M. Clarke, and Ana M. Clarke [hereinafter the "Clarke Defendants"] and Defendants Kenneth R. McCoy, Jason R. McCoy, and Iron Management II, LLC [hereinafter the "McCoy Defendants"] have moved to dismiss Plaintiff's claims in Counts III and IV. Plaintiff in turn has moved to dismiss the counterclaims. I deny Plaintiff's Motion to Dismiss in its entirety and deny the McCoy Defendants' Motion to Dismiss as to Plaintiffs' fraudulent conveyance claims.

Most of these motions are summarily denied in the accompanying order. This memorandum addresses the two motions that are granted.

# I. Analysis

This motion is governed by the well-established standards of Fed. R. Civ. P. 12(b)(6), as amplified by *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). For present purposes, the question is whether the Complaint succeeds in pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That question must be answered through the prism of Fed. R. Civ. P. 9(b), which provides that a complaint alleging fraud must state "with particularity the circumstances constituting fraud . . . ." Applying these standards, I find that Plaintiff has not alleged facts with sufficient specificity to state a claim of fraudulent conveyance against the Clarke Defendants. Nor has Plaintiff stated a claim of civil conspiracy against any party.[1]

---

[1] Defendants argue that Plaintiff's Second Amended Complaint should be dismissed because it cites no law supporting its claims. I do not agree that this omission constitutes grounds for dismissal. *See, e.g.*, *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014) ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to

2

**A. Count III: Fraudulent Conveyance**

In Count III, Plaintiff alleges that Defendant Seneca Coal has fraudulently conveyed assets to Lara Natural Resources and Iron Management. Plaintiff further alleges that Seneca has fraudulently transferred funds to affiliates rather than satisfying its financial obligations to Plaintiff, and that it executed fraudulent conveyances by selling coal to affiliates or insiders at prices well below market rate. Only the claim against Iron Management is sufficiently pled.

The parties have expressed some disagreement about the controlling law for Plaintiff's fraudulent conveyance claims, but seemingly concede that the choice of law has little bearing on the outcome of this case. Liability for fraudulent conveyance is defined by state statute. Ohio, Delaware, and North Carolina have adopted the Uniform Fraudulent Transfer Act (UFTA), while Virginia has adopted its own fraudulent transfer legislation, albeit with only minor differences. Under Delaware choice of law rules, Virginia appears to have the most significant contact with the conduct giving rise to Plaintiff's claims in Count III.[2] Though it is incorporated in Delaware, Defendant Seneca Coal Resources, LLC maintains its principal place of business in

---

state a claim."). The Second Amended Complaint describes the cause of action for each count: breach of contract, fraudulent conveyance, and conspiracy to commit fraudulent transfer. Plaintiff has given Defendants fair notice of the claims against them.

[2] The case was transferred to the District of Delaware from the Northern District of Ohio upon Defendants Seneca Coal Resources, LLC's Motion to Transfer Venue Under 28 U.S.C. § 1404(a). Defendant moved for transfer pursuant to a forum selection clause in Section 9.10 of the Unit Purchase Agreement. ECF No. 59. Ordinarily, when a case is transferred to a new venue under Section 1404(a), a transferee court sitting in diversity must apply the law of the transferor venue. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). The Supreme Court has held, however, that this rule does not apply when a case is transferred under Section 1404(a) pursuant to a forum selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 582 (2013). Rather, a transferee court in this context will apply the choice of law rules of the transferee's forum state. *Id.* I will accordingly analyze choice of law questions according to Delaware law. Delaware courts apply the "most significant relationship" test of the Second Restatement of Conflicts to both contract and tort claims. *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41 (Del. 1991). On balance, it seems most appropriate to apply Virginia law because the conduct giving rise to Plaintiff's fraudulent transfer claims occurred in Virginia.

3

Virginia. Pl.'s Second Am. Compl. ("SAC") ¶ 5, ECF No. 96. Any alleged fraudulent transfer, including the sale of coal below market rates, was likely executed in Virginia. I will therefore apply Virginia's fraudulent transfer laws in evaluating claims in Count III. Parenthetically, the same result would follow under the laws of Ohio, Delaware, or North Carolina.

Virginia's fraudulent conveyance statute follows the same criteria as the Uniform Fraudulent Transfer Act. Under Virginia Code § 55-80, a conveyance of assets with "intent to delay, hinder or defraud creditors, purchasers or other persons [with a legal claim against the party]" will be void with respect to that creditor. While section 55-80 requires a showing of intent, a plaintiff may make out a prima facie case by alleging facts reflecting "badges" of fraud. *Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 284, 717 S.E.2d 126, 131 (2011). Badges of fraud include the following: "(1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; and (6) fraudulent incurrence of indebtedness after the conveyance." *Id.* at 285.[3]

Virginia Code § 55-81 sets out a separate fraudulent transfer provision that requires no showing of intent. Section 55-81 provides that a transfer or conveyance of assets "which is not

---

[3] The UFTA also allows a court to consider circumstantial evidence in "determining actual intent." The factors differ somewhat from those enumerated by the Supreme Court of Virginia. Under the UFTA, a court may consider whether: "(1) The transfer or obligation was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer or obligation was disclosed or concealed; (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." *See, e.g.*, Del. Code Ann. tit. 6, § 1304. *See also* N.C. Gen. Stat. Ann. § 39-23.4 (listing the same and providing two additional badges of fraud).

4

upon consideration deemed valuable in law" by "an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made . . . ." Va. Code § 55-81.

In evaluating Count III, it is instructive to compare Plaintiff's factual allegations against Iron Management, affiliated with the McCoy Defendants, with those against Lara Natural Resources, affiliated with the Clarke Defendants. Plaintiff alleges that Seneca "has an outstanding debt to Cliffs for reimbursement and indemnification." SAC ¶ 82. Plaintiff alleges that despite its obligations to Cliffs, Seneca "transferred or diverted monies and/or funds to Lara Natural Resources, Iron Management, and 'other affiliate companies owned by the members' . . . ." *Id.* ¶ 84. Plaintiff specifically alleges that Seneca transferred $300,000 to Iron Management "shortly after Seneca failed to make the $437,000 lease payment on the BB&T lease and failed to replace Cliffs' bonds as required under the UPA." *Id.* ¶ 87. By comparison, Plaintiff has not specifically alleged any similar transfer to Lara Natural Resources. Rather, Plaintiff states only that Seneca transferred funds to Lara Natural Resources, and alleges that Seneca transferred "at least $2.4 million to insider affiliate companies" within seven weeks of executing the UPA. *Id.* ¶ 49.

The complaint therefore suffices to state a claim of fraudulent transfer against Iron Management. Plaintiff alleged a specific transfer that Seneca made to Iron Management, as well as alleged facts that Virginia courts recognize as badges of fraud. Pl.'s Answering Br. 11–12, ECF No. 112 (citing SAC ¶¶ 44, 49, 88, 99–100).[4]

---

[4] Because Virginia courts have recognized fewer badges of fraud than are listed in the UFTA, it necessarily constitutes a more stringent standard. It follows that Plaintiff's claim would also survive in a pure UFTA jurisdiction.

In contrast, I find that Plaintiff has not stated a claim for fraudulent conveyance against Lara Natural Resources. Plaintiff has alleged no facts lending plausibility to the claim that Lara Natural Resources itself received any of the $2.4 million that Seneca is alleged to have fraudulently transferred. It is insufficient under Rule 9(b) for a plaintiff to allege facts that merely replicate the language of a cause of action. Here, because Cliffs offers no specific facts relating to transfers that Lara Natural Resources allegedly received, I must dismiss its claim against Lara Natural Resources under Section 55-80. For the same reason, I find that Plaintiff has also not stated a claim under Section 55-81. Although Cliffs has alleged facts indicating that Seneca had insufficient property to pay its debts at the time it transferred $2.4 million in assets to other parties, *Hudson v. Hudson*, 249 Va. 335, 340, 455 S.E.2d 14, 17 (1995), SAC ¶ 56, 59, it still must specifically allege facts relating to the transfer itself. I therefore dismiss all claims against Lara Natural Resources for fraudulent conveyance or transfer.

For similar reasons, I find that Plaintiff has not stated a claim of fraudulent conveyance arising from Seneca's alleged sale of coal to various "insiders" at prices below market value. Plaintiff alleges that "Seneca sold coal to insiders and/or affiliates at a price substantially below market rate . . ." and "received a substantially reduced price from the going market rates." SAC ¶ 97, 99. The Second Amended Complaint nowhere specifies which "insiders" or "affiliates" purchased coal at the allegedly reduced price. Nor does it contain any facts indicating what a fair market price would have been at the time of sale and what the alleged "insiders" or "affiliates" paid for the coal. Without this information, Plaintiff has offered no reason to find these allegations plausible.

In dismissing these claims, it bears mention that to a large degree, the fraudulent transfer claims ultimately implicate Cliffs' ability to satisfy a judgment should it prevail. A federal court

6

has broad power to enforce its judgments under Fed. R. Civ. P. 69. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F. 3d 298 (3d Cir. 2006). If funds have moved improperly, Cliffs may yet have opportunity to revisit such issues later, depending on the outcome of this litigation.

**B. Count IV: Civil Conspiracy**

In Count IV, Plaintiff asserts a claim of "Conspiracy to Commit Fraudulent Transfer" against defendants acting in their individual capacities ("Individual Defendants"). The Individual Defendants include the members of Seneca, Lara Natural Resources, and Iron Management, as well as Thomas M. Clarke, who allegedly owns or manages "the insiders and/or affiliates who received coal at below market value." SAC ¶ 106. Cliffs alleges that the defendants had "a personal financial interest in ensuring that Seneca's funds would not be used to repay its debts to Cliffs, but rather to divert such funds away to Lara Natural Resources, Iron Management, and other owned 'affiliates' of Seneca, and to sell coal to affiliates of Seneca owned by Thomas M. Clarke at below market prices." *Id.* ¶ 108. Plaintiff further alleges that the Individual Defendants "maliciously collaborated" to divert funds from Cliffs, and that they either participated in, authorized, or approved the allegedly fraudulent transfers. *Id.* ¶ 109, 111. With these allegations, Plaintiff claims that the Individual Defendants have been parties to a conspiracy to commit fraudulent transfer.

Plaintiff's claim presumably arises from the common law doctrine of civil conspiracy. Again there is some uncertainty as to which state's law should govern. Here, the actions giving rise to the alleged conspiracy presumably occurred in the states where the Individual Defendants live and conduct business. For purposes of this motion to dismiss, applying Delaware's choice

of law rules, I will further apply the law of the states where each respective group of defendants resides.

Ana and Thomas Clarke are Virginia citizens, and Lara Natural Resources is a Virginia company with a principal place of business in Virginia. SAC ¶¶ 6–7, 10. I will therefore apply Virginia's civil conspiracy doctrine to claims against the Clarkes. Similarly, Kenneth and Jason McCoy are North Carolina citizens. Their company, Iron Management, is incorporated and has its principal place of business in North Carolina. SAC ¶¶ 8–9, 11. I will therefore apply North Carolina law in evaluating claims against the McCoys.

In fact, principles of civil conspiracy vary little between Virginia and North Carolina. Virginia courts define civil conspiracy as "a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." *Glass v. Glass*, 228 Va. 39, 47, 321 S.E.2d 69, 74 (1984). Virginia courts have held that "an essential element of any conspiracy claim is an agreement or understanding willingly entered into by all parties to it for the accomplishment of an unlawful purpose." *Long v. Old Point Bank of Phoebus*, 41 Va. Cir. 409 (1997). A plaintiff does not need to allege a "formal agreement" to state a civil conspiracy claim. Rather, a plaintiff can draw inferences from "relevant and competent circumstantial evidence, such as the acts and conduct of the alleged conspirators themselves." *Id*.

North Carolina law follows similar principles. The elements of civil conspiracy consist of: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do [a] lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Privette v. Univ. of N. Carolina at Chapel Hill*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989). As in Virginia, North Carolina courts

8

allow a plaintiff to prove an agreement through circumstantial evidence, which must be "sufficient to create more than a mere suspicion or conjecture . . . ." *Henderson v. LeBauer*, 101 N.C. App. 255, 261, 399 S.E.2d 142, 145 (1991).

Here, Plaintiff's claims against all Individual Defendants suffer from the same inadequacy. Under the laws of both Virginia and North Carolina, Plaintiff has not alleged facts—direct or circumstantial—suggesting that an agreement existed between any parties. At most, Plaintiff invites suspicion that such agreements might exist through its allegations of the Individual Defendants' combined ownership interests in Seneca and either Iron Management or Lara Natural Resources and the existence of each defendant's "personal financial interest." SAC ¶ 108. Beyond that, Plaintiff has alleged no facts describing actions of Individual Defendants that could provide circumstantial evidence of an agreement. In the absence of any supporting facts, I find that Plaintiff has not stated a claim of civil conspiracy against any defendant. I dismiss Count IV in its entirety, again without prejudice.

## C. Seneca's Motion to Join

Defendant Seneca Coal has filed a motion to join in the Clarke and McCoy Defendants' Motions to Dismiss. ECF No. 107. Seneca filed an Answer in response to Plaintiff's Second Amended Complaint, ECF No. 99, and therefore cannot invoke Rule 12(b)(6) as a basis for seeking dismissal of Counts III and IV. Although Seneca did not clearly express the procedural grounds for its motion, arguably it can do so under Fed. R. Civ. P. 12(h)(2)(B), in the form of a motion for judgment on the pleadings. ECF No. 124. Though Seneca's motion raises some procedural concerns, it is in substance of little consequence. With respect to Seneca's dealing with Iron Management, Plaintiff has stated a claim of fraudulent conveyance. Assuming

Plaintiff included Seneca as a defendant in Count IV, which is far from clear, that count has been dismissed in its entirety. In that respect, Seneca also benefits from the order of dismissal.

**II. Conclusion**

For reasons stated above, the Clarke Defendants' Motion to Dismiss is granted in its entirety, and the McCoy Defendants' Motion to Dismiss is granted as to Count IV. To the extent that Plaintiff has asserted civil conspiracy claims in Count IV against Defendant Seneca Coal, these claims are also dismissed. Dismissal is without prejudice and Plaintiff has leave to amend.

/s/ Gerald Austin McHugh
United States District Judge